UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

TRUSTEES OF THE OPERATING ENGINEERS PENSION TRUST; TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE FUND; TRUSTEES OF THE OPERATING ENGINEERS JOURNEYMAN AND APPRENTICE TRAINING TRUST; and TRUSTEES OF THE OPERATING ENGINEERS VACATION-HOLIDAY SAVINGS TRUST,

Plaintiffs,

vs.

DIVERSIFIED CONCRETE CUTTING, INC., a Domestic Corporation; SPECIALTY CONTRACTING CO. d/b/a DIVERSIFIED DEMOLITION CO.; and KENNETH M. MERCURIO, an individual,

Defendant.

CASE NO: 2:17-cv-02686-APG-GWF

**ORDER GRANTING DEFAULT JUDGMENT AGAINST DIVERSIFIED CONCRETE CUTTING, INC. AND KENNETH M. MERCURIO**

(ECF No. 12)

The plaintiffs move for default judgment against defendants Diversified Concrete Cutting, Inc. (DCC) and Kenneth M. Mercurio (collectively hereinafter "Defendants"). Based on the record before me, good cause exists to grant the motion and enter default judgment.

## **FINDINGS OF FACT**

The Plaintiffs are the Trustees of collectively bargained fringe benefit trusts. They brought this action under Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1132. The Plaintiffs' complaint seeks unpaid fringe benefit contributions owing to the Trusts from the Defendants. The contributions are owed pursuant to a collective bargaining agreement between the Defendants and the International Union of Operating Engineers, Local 12. The claim on the motion for default judgment is based upon DCC's failure to pay the amount of fringe benefit contributions shown on fringe benefit contribution reports provided by DCC to the Trusts and an audit of DCC's records by the Plaintiffs. The Plaintiffs also seek liquidated damages, prejudgment interest, attorneys' fees, and costs from DCC and Mercurio based

1

on the unpaid contributions shown on the audit and monthly reports. These additional amounts are required under the collective bargaining agreement and are mandated under 29 U.S.C. § 1132(g)(2).

**A.    DCC Failed to Pay Required Contributions.**

Despite DCC's obligations under its agreements, it failed to timely pay fringe benefit contributions for the months of June – November 2017. Additionally, DCC owes additional amounts to the Plaintiffs based on the audit of its payroll records. The total contributions shown in the audit are $8,183.70.

**B.    DCC and Mercurio Failed to Answer the Complaint, and Default was Entered by the Clerk.**

On October 19, 2017, the Plaintiffs commenced this action by filing their Complaint against defendants DCC, Mercurio, and Specialty Contracting Co. d/b/a Diversified Demolition Co. (Specialty Contracting Co. filed bankruptcy on January 11, 2018 and has been dismissed). The Plaintiffs asserted claims for breach of written collective bargaining agreements and related trust agreements, and breach of fiduciary duties. The Plaintiffs' agents personally served DCC with the summons and complaint on October 25, 2017, by service upon its registered agent. The Plaintiffs' agents personally served Mercurio with the summons and complaint on October 25, 2017. Under Federal Rule of Civil Procedure 12(a), DCC and Mercurio's responses were due no later than November 15, 2017.

DCC and Mercurio failed to respond to the summons and complaint within the time allotted, and on November 16, 2017, the Plaintiffs moved for entry of default against them. On November 17, 2017, the Clerk of Court entered default against DCC and Mercurio.

The Defendants did not appear in this case, and on April 10, 2018 the Plaintiffs moved for default judgment and served DCC and Mercurio with the motion via U.S. Mail.

**CONCLUSIONS OF LAW**

The Plaintiffs are entitled to default judgment against DCC and Mercurio because the Defendants failed to abide by the terms of the collective bargaining agreements and related trust agreements. In addition to breaching the collective bargaining agreements and related trust

agreements, the Defendants are liable to the Plaintiffs for breaching fiduciary duties to the Trusts, their participants, and beneficiaries.

### A. DCC BREACHED THE COLLECTIVE BARGAINING AGREEMENT, RELATED TRUST AGREEMENTS AND VIOLATED ERISA.

When considering a motion for default judgment, I must accept as true all allegations in the complaint except those relating to the amount of damages. Geddes v. United Financial Corp., 559 F.2d 557, 560 (9th Cir. 1977); FED. R. CIV. P. 8(d). In their complaint, the Plaintiffs alleged DCC agreed to the terms of collective bargaining agreements with Local 12. The Plaintiffs also submitted signed documents showing DCC's written agreement to be a party to the collective bargaining agreement. DCC and Mercurio failed to respond to the complaint. It is therefore established that DCC is bound by the terms of the collective bargaining agreements and related trust agreements.

The collective bargaining agreement in this case requires DCC to make fringe benefit contributions for each hour worked by or paid to any of its employees. It is well-established in this Circuit that similar contractual provisions for the collection of fringe benefit contributions are approved of and well within the mandates of ERISA. Waggoner v. Wm. Radkovich Co., Inc., 620 F.2d 206 (9th Cir. 1980); Burke v. Lenihan, 606 F.2d 840 (9th Cir. 1979); Waggoner v. C & D Pipeline Co., 601 F.2d 456 (9th Cir. 1979). In fact, the collective bargaining agreements approved of in Wm. Radkovich Co., Inc., Burke, and C & D Pipeline Co. are substantially similar to the collective bargaining agreement at issue here, though, with minor differences. In C & D Pipeline, the Ninth Circuit stated:

> [t]he agreement requires employers to make contributions for all hours worked by employees who perform any work covered by the agreement.
> * * *
> A requirement that contributions be based on all hours worked or paid permits the trustees to rely on payroll records to determine if employers are making proper contributions to the trust funds.

601 F.2d at 459.

ERISA places an affirmative duty upon employers to maintain proper payroll and related records. Brick Masons Pension Trust v. Industrial Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir. 1988). DCC had the primary responsibility for calculating and reporting the amount of fringe benefit contributions due to the Plaintiffs by completing approved monthly reporting forms and mailing those forms to the Plaintiffs. Furthermore, DCC agreed it would pay those fringe benefit contributions as reported on a monthly basis. The Plaintiffs submitted copies of monthly reports and an audit report. DCC did not answer the Plaintiffs' complaint or respond to the Plaintiffs' motion for default judgment. Accordingly, DCC has admitted that it owes delinquent contributions to the Trusts. See Geddes, 559 F.2d at 560. DCC remains liable to the Plaintiffs for the unpaid fringe benefit contributions. See Operating Eng'rs Pension Trust vs. A-C Co., 859 F.2d 1336, 1342 (9th Cir. 1988).

**B. THE COLLECTIVE BARGAINING AGREEMENT AND 29 U.S.C. § 1132(g)(2) REQUIRE DCC'S PAYMENT OF LIQUIDATED DAMAGES, PREJUDGMENT INTEREST, AND ATTORNEY'S FEES AND COSTS TO THE PLAINTIFFS.**

The collective bargaining agreement, to which DCC is bound, contains provisions requiring delinquent employers to pay liquidated damages, prejudgment interest, auditing costs, and attorney's fees and costs when the Trusts recover delinquent fringe benefit contributions. Ninth Circuit precedent holds such a clause fully enforceable because of "the federal labor policy of enforcing the parties' intent as expressed in their negotiated agreement." Waggoner v. Nw. Excavating, Inc., 642 F.2d 333, 339 (9th Cir. 1981), reaff'd on remand 685 F.2d 1224 (9th Cir. 1982). Other federal courts have also upheld and enforced liquidated damages provisions where, as here, the amount of liquidated damages is reasonable. See, e.g., U.S. for the Benefit and on Behalf of Sherman v. Carter, 353 U.S. 210, 77 S.Ct. 793 (1957) (approving a liquidated damages clause); United O.A.B. & S.M.U. 21 v. Thorlief Larson & Son, Inc., 519 F.2d 331, 337 (9th Cir. 1975) (same). Pursuant to Ninth Circuit precedent, the terms of the collective bargaining agreement, as it was negotiated and agreed to by the parties, should be upheld and the Plaintiffs are entitled to their contract remedies of liquidated damages, prejudgment interest, auditing costs, and attorneys' fees and costs.

Section 502 of ERISA, 29 U.S.C. § 1132, also mandates the payment of those amounts. Congress amended 29 U.S.C. § 1132 in 1980 to specifically provide for the payment of prejudgment interest, liquidated damages, and attorney's fees and costs when plaintiffs recover unpaid fringe benefit contributions. That section provides:

> (2) In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, ***the court shall award the plan***:
> (A) the unpaid contributions,
> (B) ***interest on the unpaid contributions***,
> (C) an amount equal to the greater of--
>     (i) ***interest on the unpaid contributions***, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20% (or such higher percentages as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) ***reasonable attorney's fees and costs*** of the action, to be paid by the defendant, and
> (E) such other legal and equitable relief as the court deems appropriate.
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26.

29 U.S.C. § 1132(g)(2) (emphasis added). The Ninth Circuit has confirmed that this statute mandates an award of prejudgment interest, liquidated damages, and attorneys' fees and costs. Kemmis v. McGoldrick, 706 F.2d 993, 997-98 (9th Cir. 1983); San Pedro Fisherman's Welfare Trust Fund v. DiBenardo, 664 F.2d 1344 (9th Cir. 1982) (holding the damages specified in 29 U.S.C. § 1132(g)(2), including attorneys' fees, must be awarded whenever an ERISA trust fund obtains a judgment for unpaid contributions against an employer).

### 1. Liquidated Damages

An employer must pay liquidated damages to an employee-benefit trust fund when "(1) the fiduciary obtains a judgment in favor of the plan, (2) unpaid contributions exist at the time of suit, and (3) the plan provides for liquidated damages." Nw. Adm'rs, Inc. v. Albertson's, Inc., 104 F.3d 253, 259 (9th Cir. 1996) (citing Idaho Plumbers & Pipefitters Health and Welfare Fund v. United Mech. Contractors, Inc., 875 F.2d 212, 215 (9th Cir. 1989)); *see also* Trs. of the Constr. Industry

and Laborers Health and Welfare Fund v. B. Witt Concrete Cutting, Inc., 685 F. Supp. 2d 1158, 1162 (D. Nev. 2010).

Here the principal amount of unpaid fringe benefit contributions owing to the Trusts totals $18,226.92. Under 29 U.S.C. § 1132(g)(2) and the liquidated damages clause in the parties' agreements (which mandate 10% of the amount of unpaid contributions be paid as liquidated damages), the Plaintiffs are entitled to liquidated damages in the amount of $2,866.08. This amount is more than 10% of the contributions now owing because DCC paid some contributions late but not the liquidated damages as a result of its late payment.

### 2. Prejudgment Interest

The Plaintiffs are also entitled to prejudgment interest on the unpaid contributions under 29 U.S.C. § 1132(g)(2)(B). As of the date of the Plaintiffs' motion, prejudgment interest totaled $1,598.77 and the amount of prejudgment interest continues to accrue daily. Prejudgment interest was calculated under 26 U.S.C. § 6621.

### 3. Attorney's Fees

District Courts are statutorily mandated to award employee-benefit trust funds a reasonable amount for attorney's fees and costs expended in collecting unpaid fringe benefit contributions. Trs. of the Amalgamated Ins. Fund v. Geltman Indus., Inc., 784 F.2d 926, 931 (9th Cir. 1986) (citing Lads Trucking v. Board of Trs., 777 F.2d 1371, 1373 (9th Cir.1985); Operating Eng'rs. Pension Trust v. Beck Eng'g. & Surveying, 746 F.2d 557, 569 (9th Cir.1984); Operating Eng'rs Pension Trust v. Reed, 726 F.2d 513, 514 (9th Cir.1984); Kemmis v. McGoldrick, 706 F.2d at 997-98; San Pedro Fishermen's Welfare Trust Fund, 664 F.2d at 1346)). As of the date of the Plaintiffs' motion, attorney's fees and costs totaled $22,142.40 ($20,901.00 in attorney's fees and $1,241.40 in costs). This amount is reasonably supported by the declaration of the Plaintiffs' counsel and is reasonable given the prevailing rates in this district.

/ / / /

/ / / /

/ / / /

/ / / /

C. **DEFAULT JUDGMENT IS PROPER BECAUSE ALL <u>EITEL</u> FACTORS WEIGH IN FAVOR OF ENTERING DEFAULT JUDGMENT AGAINST THE DEFENDANTS.**

I must consider the following factors when considering entry of a default judgment:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (5) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). These factors weigh in favor of entering default judgment in this case.

D. **MERCURIO, AS A FIDUCIARY OVER CONTRIBUTIONS OWED TO THE VACATION TRUST FUND ONLY, IS PERSONALLY LIABLE.**

DCC is liable for unpaid fringe benefit contributions, liquidated damages, prejudgment interest, and the Plaintiffs' attorney's fees and costs. Mercurio, as the sole owner and shareholder of DCC, is individually liable for amounts owed to the Vacation Fund because he is a fiduciary of the Vacation Fund. As a fiduciary, he had a duty to ensure that Trust assets, here employee fringe benefit contributions, were properly submitted and did not inure to the benefit of DCC. Mercurio did not ensure those contributions were properly provided to the Plaintiffs, and he and DCC owe a delinquency to the Trusts.

1. **Mr. Mercurio has a Fiduciary Duty to the Vacation Trust Fund.**

Under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting … the disposition of its assets …." 29 U.S.C. § 1002(21)(A). The Ninth Circuit holds this definition of "fiduciary" extends to corporate officers and controlling shareholders. Kayes v. Pac. Lumber Co., 51 F.3d 1449, 1459–61 (9th Cir. 1995); see also Yeseta v. Baima, 837 F.2d 380 (9th Cir. 1995) (holding a corporate officer liable as fiduciary under ERISA). Contributions to the Vacation Fund are employee contributions held in trust by DCC to be remitted to the Vacation Fund.

As a fiduciary, Mr. Mercurio must "discharge [his] duties with respect to a plan solely in the interest of the participants and beneficiaries and - - (A) for [the] exclusive purpose of (i) providing

benefits to participants and their beneficiaries; and … (D) in accordance with the documents and instruments governing the plan ….." 29 U.S.C. § 1104(a)(1)(A)-(D). Mr. Mercurio breached his fiduciary duties and failed to act in the best interests of DCC's participant employees because he failed to remit money withheld from the participant employee's wages and converted them for use by DCC and himself. Mr. Mercurio cannot dispute this fact because the contributions are still outstanding and the Vacation Fund has never received payment of those contributions from DCC or Mr. Mercurio.

### 2. Contributions Drawn from Employee Payroll Deductions are De Facto Trust Assets.

Regardless of any specific language contained in the Trust Agreements, the U.S. Department of Labor has stated that employee contributions paid through employee payroll deductions are de facto trust assets. *See* 29 C.F.R. 2510.3-102(a). This conclusion is also supported by the Ninth Circuit's decision in Nelson v. EG & G Energy Measurements Group, 37 F.3d 1384, 1390–91 (9th Cir. 1994). The Nelson Court held employee contributions from payroll are plan assets. Id. at 1390-91. The deductions become plan assets as soon as they "can reasonably be segregated from the employer's general assets." Id. at 1391.

In this case, the payroll deductions of DCC's employees were plan assets as soon as they could reasonably be segregated from DCC's general assets. The reasonable time for segregation of funds has passed. DCC's unpaid contribution reports and amounts shown in the audit results date back many months.

### ORDER

IT IS HEREBY ORDERED that:

1. The Plaintiffs' Motion for Default Judgment against defendants Diversified Concrete Cutting, Inc. and Kenneth M. Mercurio **(ECF No. 12) is GRANTED.**

2. DCC is liable to the Plaintiffs for unpaid fringe benefit contributions in the amount of $18,226.92.

3. Kenneth M. Mercurio is liable to the Plaintiffs for unpaid contributions to the Vacation Fund in the amount of $1,760.69.

4. DCC's liability and the Plaintiffs' recovery of the unpaid contributions also entitles the Plaintiffs to recover liquidated damages, prejudgment interest, and auditing costs in the amount of $5,964.85.

5. Mercurio and DCC are jointly and severally liable to the Plaintiffs for their attorney's fees and costs in the amount of $22,142.40.

6. The clerk of the court shall enter Judgment Mr. Mercurio in the amount of $23,903.09 and Judgment against DCC in the amount of $46,334.17. The Judgments shall bear statutory post-judgment interest.

Dated this 27th day of April, 2018.

By:_____
Andrew P. Gordon
UNITED STATES DISTRICT JUDGE